### ROSENBLATT et al. v. SAMSON.

(Supreme Court, Appellate Term.    January 23, 1899.)

LANDLORD AND TENANT—RELATION—EVIDENCE—RELEVANCY.

The issue was whether defendant took possession of premises of plaintiff to effect a sale of the tenant's business, and promised to pay the rent for the time he might occupy the place.    The conflict was sharp.    On cross-examination, plaintiff volunteered the statement that a lease under which defendant contended the tenant had actually occupied during the period in dispute was never delivered, because defendant refused to become surety thereon.    *Held*, that it was prejudicial error not to let defendant show whether, before the time it was alleged he made the promise, plaintiff had asked him to become surety on the lease.

Appeal from municipal court, borough of Manhattan, Seventh district.

Action by Simon M. Rosenblatt and another against Daniel T. Samson.    From a judgment in favor of plaintiffs, rendered by the court without a jury, defendant appeals.    Reversed.

The action was originally brought to recover $233.33, for the defendant's alleged use and occupation of the premises known as Nos. 509, 511, and 513 Water street, and 70, 72, 74, and 76 Rutgers street, in the borough of Manhattan, from the 2d day of September, 1897, to and including October 11, 1897; but upon the trial the complaint was amended to conform to the proof, by setting up a cause of action on a contract of hiring.    The pleadings were oral, and the answer a general denial.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

John H. Corwin, for appellant.
Henry V. Rothschild, for respondents.

GIEGERICH, J.    On or about the 31st day of August, 1897, a warrant was issued at the instance of the plaintiffs to remove, for nonpayment of rent, the tenant in possession of the premises above mentioned, to wit, one Catherine Joyce, who was doing business under the name and style of the Joyce Trucking Company, and a city marshal named Gross was intrusted with its execution.    Coincidently, the defendant employed another city marshal, named Barker, to foreclose a chattel mortgage against property owned by the same lessee, and contained within the demised premises. Thus, the two marshals, in the performance of their respective missions, met at the premises named, and, by mutual understanding, deferred action upon the warrant until the following day, when the plaintiff Simon N. Rosenblatt, the lessor's husband, and the defendant, together with several others, again met at the said premises. Exactly what occurred at this second meeting is seriously disputed

by the parties litigant and their witnesses.    According to the plaintiffs' testimony, the defendant there stated that he had arranged with Mrs. Joyce to take charge of the business for the purpose of effecting its sale, and, for the occupancy of said premises, agreed to pay a monthly rental of $175.    The plaintiff Rosenblatt was partly corroborated by the assistant to Marshal Gross, who testified, in effect, that execution of the warrant was abandoned upon defendant's promise to make compensation during the period he might occupy said premises.    Yet the defendant denied in toto the making of any such representations or promises, or that he had ever arranged for or taken possession of the premises.    The defendant's version is confirmed by two of his witnesses, one of whom, named Coger, the bookkeeper for the Joyce Trucking Company, testified that the defendant did not promise to pay the rent, and did not represent him (witness) as his agent or the person who would pay the rent; and another, a witness named Harris, one of his attorneys, who likewise swore to having been present at the interview of September 1st, and to the absence there of any statement regarding the payment of rent.

The defendant urged upon the trial, with considerable zeal, that Mrs. Joyce, and not the defendant, was in actual possession of the premises in suit during the period for which rent is claimed; that the plaintiffs demised said premises to Mrs. Joyce for one year from May 1, 1896, by a lease bearing date April 29, 1896; and that, upon the expiration thereof, she became, with the assent of the plaintiffs, a tenant from year to year.    In support of such contention, there was introduced in evidence, at the instance of the defendant, a paper purporting to be a yearly lease of the premises in question to Mrs. Joyce, from May 1, 1896, at a rental of $2,100, and which contained a covenant that the defendant would become surety for the payment of such rent.    This paper bore the signatures of the respective parties thereto, save that of the defendant.    Testimony was given by the plaintiff Rosenblatt to the effect that Mrs. Joyce took and retained possession, pursuant to such lease, until January 1, 1898; but later in his examination we find evidence that the instrument referred to "was never executed, because Mr. Samson refused to sign it as surety, and it was never transferred to Mrs. Joyce"; and when asked, "Have they ever had any lease since that lease?" he answered, "They have not, and never had, that lease." The defendant, on his direct examination, was asked this question, "Had Mr. Rosenblatt asked you before that to become surety on the lease?" and, it being excluded on the plaintiffs' objection, an exception was noted by the defendant.    In view of the sharp conflict of testimony with respect to the making of the alleged promise on the part of the defendant to pay the rent for the period referred to, this question, in my opinion, should have been allowed.    It certainly was relevant to the issues whether or not the defendant had theretofore refused to become a surety for the faithful performance by Mrs. Joyce, as tenant, of the covenants of a lease.    Manifestly, it was so regarded by the plaintiffs, one of whom volunteered upon cross-examination the statement, as cited, that the writing was not

executed, because of the defendant's refusal to become a surety thereon; and such testimony having been received without objection, and no motion to strike it out having been made, leave should have been accorded the defendant to introduce testimony upon the subject. Under the circumstances, the exclusion of such question was error of so substantial a nature, to my mind, as to necessitate a new trial.

It follows from these views that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.